IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JAIME LUIS MILLÁN-FELICIANO, <br><br> Plaintiffs, <br><br> v. <br><br> CHAMPS SPORTS <br> as member of FOOT LOCKER, INC., <br><br> Defendants. | CIVIL NO.: 11-1823 (MEL) |

**OPINION AND ORDER**

On July 20, 2011, plaintiff Jaime Luis Millán-Feliciano ("Millán" or "plaintiff") filed a complaint in the Court of First Instance, Ponce Part, against Champs Sports, as member of Foot Locker, Inc., ("Champs" or "defendant") alleging wrongful discharge under Puerto Rico Law 80 of May 30, 1976, P.R. LAWS ANN. tit. 29, § 185a ("Law 80"), and discrimination based on age under Law 100 of June 30, 1959, P.R. LAWS ANN. tit. 29, § 146 ("Law 100"). Docket No. 1, at 1; Docket No. 1-15, at 1, 3. Defendant filed its answer to the complaint and timely removed the case to this court on diversity grounds on August 19, 2011. Docket No. 1, at 1; Docket No. 1-22, at 1. Pending before the court is defendant's motion for summary judgment and memorandum, Docket Nos. 20; 20-6, as well as plaintiff's opposition and memorandum, Docket Nos. 21; 22, and defendant's reply, Docket Nos. 24; 25. For the reasons set forth below, the motion for summary judgment is granted in part and denied in part.

## I.    FACTUAL BACKGROUND[1]

Millán, who was born in 1964, began working for Champs in 1985 and was terminated on March 16, 2010, when he was 46 years old.  During his employment at Champs, Millán held the positions of part-time associate, full-time associate, assistant manager, manager, and store manager.  Millán became store manager of the Champs store at Plaza Del Caribe Mall ("Plaza Del Caribe store") in 1997.  As store manager, Millán was first supervised by Nestor Krant and then by Pedro Fuentes ("Fuentes").  Docket No. 20-1, ¶¶ 3-5, 14-15, 32; Docket No. 21, ¶¶ 3-5, 14-15, 32.

Champs's Discipline Policy indicates, and Millán was aware, that Millán could be terminated for work performance below company standard.  On April 19, 2000, Millán received and signed a written notice indicating that the April 13, 2000, audit of the Plaza Del Caribe store "showed unacceptable operational deficiencies," including problems with "overall paperwork compliance, store cleanliness, backroom and office organization, gameplan execution, and salesfloor presentation."  According to the audit, there was also a loss of $26,988.89 in merchandise inventory.  Millán was informed that there must be "a reduction of shrinkage to an acceptable level."  The notice stated that "[f]urther violation of this or other Company policies or failure to maintain an acceptable level of performance will result in further discipline up to and including termination."  Docket No. 20-1, ¶¶ 13, 16-17, 19-20; Docket No. 20-3, at 15, 21; Docket No. 21, ¶¶ 13, 16-17, 19-20.

---

[1] Local Rule 56 "structures the presentation of proof at summary judgment."  Goya Foods, Inc. v. Orion Distributors, Inc., Civil No. Civil No. 10-1168 (BJM), 2012 WL 1069191, at *1 (D.P.R. Mar. 29, 2012).  It "relieve[s] the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute," CMI Capital Market Inv. v. González Toro, 520 F.3d 58, 63 (1st Cir. 2008), by requiring "a party opposing a motion for summary judgment to accept, deny, or qualify each entry in the movant's statement of material facts paragraph by paragraph and to support any denials, qualifications, or new assertions by particularized citations to the record."  Cabán Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 6-7 (1st Cir. 2007).  In accordance with Local Civil Rule 56(e), all proposed facts that are properly supported by record evidence and have not been successfully controverted or qualified by the opposing party have been deemed admitted.

On August 4, 2000, Millán received and signed a "final" notice indicating that the July 13, 2000, audit showed an inventory loss of $17,870.04 or 3.31% on a budget of 1.70%. The notice also concerned Millán's "very inconsistent" compliance with visual and operational standards. Millán was informed that "[f]ailure to maintain [asset protection] controls in a consistent manner, … unexplained bad results, … [a]ny violation of company policies or procedures, or under standards performance, will result in termination." Docket No. 20-1, ¶¶ 22, 25; Docket No. 20-4, at 2; Docket No. 21, ¶¶ 22, 25.

Each overall "asset protection checklist score" that Millán received between May 6, 2007, and February 17, 2010, "exceed[ed]" or "me[t] expectations." Nevertheless, on September 2, 2009, Millán received and signed a "final warning." The warning indicated that an "unsatisfactory audit" showed an "inventory shrinkage" of $20,362.36 or 2.06%, which was "over the allowable" (1.30%). Millán was informed that, "[i]f the results of the next and / or subsequent audit are not within company guidelines, further disciplinary action up to and including termination will occur." Docket No. 20-1, ¶¶ 26-27, 29; Docket No. 20-4, at 22; Docket No. 21, ¶¶ 26-27, 29, Part II, ¶¶ 11-16; Docket No. 21-2, at 14; Docket No. 24, Part II(B), ¶¶ 11-16.

Weeks before Millán's final store inventory on February 17, 2010, Andy Almodóvar ("Almodóvar"), a store associate who worked at the Plaza Del Caribe store, saw Fuentes and Estaban Figueroa ("Figueroa"), another district manager, "looking around the footwear in the stockroom and set[ting] aside select boxes" in the Plaza Del Caribe store. This occurred during a store visit on Millán's day off. According to Marisol Colón ("Colón"), the "Manager in Waiting," the typical procedure for store inventory is that an initial count is done by a store's employees and the auditors arrive the following day; usually, boxes are not opened when

3

conducting inventory.  Furthermore, Colón stated that store managers should be present during inventory.  It is contested whether Fuentes called Millán into the store, but it is uncontested that Millán was present in the store that day.  That day, Almodóvar also overheard Fuentes tell José Irizarry ("Irizarry"), the former manager of the Champs store in Caguas who replaced Millán, "well, can you come down to your new store" and "this is where it all ends for the old man."[2] Docket No. 21, Part II, ¶¶ 19-20, 23, 25, 27a, 29, 31a, 32, 36-37, 40; Docket No. 21-5, at 2; Docket No. 24, Part II(B), ¶¶ 19-20, 23, 25, 27a, 29, 31a, 32, 36-37, 40; Docket No. 24-3, at 8.

The audit for the Plaza Del Caribe store conducted on February 17, 2010, showed a "shrink percentage" of 2.12%, which was "[o]ver the [a]llowable" (1.30%).  Millán was terminated on March 16, 2010.  When questioned about the issue of lost inventory during his deposition, Millán stated that he requested a security camera "many times," but was not given one.  On October 3, 2010, however, the Plaza Del Caribe store had nine security cameras under Irizarry's management.  Docket No. 20-1, ¶¶ 31-32; Docket No. 20-5, at 10; Docket No. 21, ¶¶ 31-32; Docket No. 21, Part II, ¶ 6; Docket No. 21-2, at 3, 12, 19; Docket No. 21-3, at 6, 7, 11; Docket No. 24, Part II(B), ¶ 6.

Near the end of his time at Champs, Millán was no longer considered for audit traveling to other stores.  While other store managers had warehouses outside of their stores, Millán requested a warehouse and was not given one.  The day after Millán was terminated, the manager from the Champs store in Caguas was brought to the Plaza Del Caribe store to replace Millán. Back in 2005 and 2006, Millán was not selected for a manager trainer or a market leader

---

[2] Fuentes once asked Millán "if [he] was already removed or tired," although the date of this incident is unspecified. Docket No. 20-1, ¶ 37; Docket No. 21, ¶ 37.  At another point in time not specified by plaintiff, Fuentes wrote on a sales report listing that "[t]he lion ceased being a lion, and, now, is a cub."  Docket No. 21, Part II, ¶ 35; Docket No. 24, Part II(B), ¶ 35.

position, and such positions were given to younger employees with less experience at Champs. Docket No. 20-1, ¶¶ 35, 38-40; Docket No. 21, ¶¶ 35, 38-40.

## II.    STANDARD OF REVIEW

The purpose of summary judgment "is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992). Summary judgment is granted when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "'A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation.'" Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 782 (1st Cir. 2011) (quoting Rodríguez-Rivera v. Federico Trilla Reg'l Hosp., 532 F.3d 28, 30 (1st Cir. 2008)).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant presents a properly focused motion "averring 'an absence of evidence to support the nonmoving party's case[,]' [t]he burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both 'genuine' and 'material.'" Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990) (quoting Garside v. Osco Drug., Inc., 895 F.2d 46, 48 (1st Cir. 1990)). For issues where the nonmoving party bears the ultimate burden of proof, that party cannot merely "rely on the absence of competent evidence, but must affirmatively point to specific facts" in the record "that demonstrate the existence of an authentic dispute."    McCarthy 56 F.3d at 315. The plaintiff need not, however, "rely on *uncontradicted* evidence . . . . So long as the plaintiff's evidence is both cognizable and sufficiently strong to support a verdict in her favor,

the factfinder must be allowed to determine which version of the facts is most compelling." Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004) (emphasis in original).

In assessing a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990) (citations omitted). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood . . . ." Greenburg v. P. R. Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987). The court may, however, safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted).

III.    ANALYSIS

A.    Law 80

Law 80 is Puerto Rico's Wrongful Dismissal Act. It provides that an employee who is discharged without just cause must receive severance pay from her employer. 29 P.R. LAWS ANN. § 185a. Under Law 80, the employee bears the initial burden of alleging an unjust dismissal and of proving actual dismissal. See Medina v. Adecco, 561 F.Supp.2d 162, 174 (D.P.R. 2008). Once the employee meets this burden, the burden of persuasion shifts to the employer to prove that the dismissal was justified. See Baltodano v. Merck, Sharp & Dohme (I.A.) Corp., 637 F.3d 38, 42 (1st Cir. 2011). Because defendant bears this burden of persuasion, it can receive summary judgment only when "'the evidence [it] provides on the issue is conclusive.'" Garcia-Ledesma v. Centro, CIV. 10-1577 BJM, 2012 WL 1032466, at *9 (D.P.R. Mar. 27, 2012) (quoting Torres Vargas v. Santiago Cummings, 149 F.3d 29, 35 (1st Cir. 1998)).

If the employer is able to demonstrate that there was "just cause," it will not be liable under Law 80. Otero–Burgos v. Inter Am. Univ., 558 F.3d 1, 7-8 (1st Cir. 2009).

Law 80 provides a non-exhaustive list of examples of what might constitute "just cause." See 29 P.R. LAWS ANN. § 185b; Miranda Vega v. Cingular Wireless, 568 F. Supp. 2d 180, 192 (D.P.R. 2008). For instance, an employee's poor job performance may be sufficient "just cause" for dismissal. See Miranda Vega v. Cingular Wireless, 568 F. Supp. 2d 180, 192 (D.P.R. 2008); Caraballo v. Bacardi Caribbean Corp., 04-1889 RLA, 2007 WL 3027347 (D.P.R. Oct. 12, 2007); Garcia v. Am. Airlines, Inc., 673 F. Supp. 63, 67 (D.P.R. 1987). In contrast, "[a] discharge made by the mere whim of the employer or without cause relative to the proper and normal operation of the establishment shall not be considered as a discharge for good cause." Id.

In this case, it is uncontested that plaintiff was discharged on March 16, 2010, and alleged unjust dismissal. Thus, the burden of persuasion shifts to defendant to prove that it had just cause. Defendant points to four audits, along with corresponding notices or warnings, in 2000, 2009, and 2010, as evidence of plaintiff's deficient performance. Defendant specifically focuses on the "thousands of dollars in merchandise inventory losses" that occurred under plaintiff's management. See Docket No. 20-6, at 13. In the final audit less than a month before plaintiff was terminated, there was an inventory loss of $17,105.36 or 2.12%, where the target was 1.30%. Id. at 10.

Plaintiff points to his lack of a security camera as an explanation for his inability to meet the inventory loss requirement. Plaintiff argues that defendant denied his repeated requests for a resource helpful to meet a requirement for his position, dismissed him for failing to meet that requirement, and subsequently provided his replacement with nine security cameras. Defendant argues that these facts are speculative and irrelevant. Although the court renders no opinion as to

whether a security camera is necessary to bring an inventory shrinkage level below 1.30%, it is far from speculative to concede that it could be helpful. Plaintiff alleges not only that he was not given a security camera, but also that his successor received *nine* security cameras. As discussed earlier, poor job performance can certainly constitute just cause for dismissal. But an employer's inconsistency in providing resources that would be helpful in meeting a certain requirement, and dismissing on the basis of the failure to meet that requirement, could be regarded by a jury as a "mere whim of the employer" for purposes of Law 80. Defendant argues that plaintiff was "terminated for repeatedly violating Champs' rules and regulations." Docket No. 20-6, at 9. Law 80, however, requires the rules and regulations to be "reasonable." P.R. LAWS ANN. tit. 29, § 185b. The uncontested facts show that, with respect to security cameras in the workplace, plaintiff was at a disadvantage, compared at least to his successor, in meeting the rule that inventory shortages must be under 1.30%.

Defendant chose to invest in security cameras for the Plaza Del Caribe store within seven months after plaintiff's discharge. If nine security cameras would have been sufficient for plaintiff to bring his inventory losses within the requirement, defendant's primary rationale for discharging plaintiff disappears. Thus, because of the inconsistency of treatment of store managers with respect to security cameras and inventory losses, and the factual uncertainty of whether plaintiff would have met the requirement if he had the security cameras provided after his termination, defendant's motion is denied with respect to plaintiff's Law 80 claim.

### B.   Law 100

Law 100 prohibits discrimination by an employer in the workplace by reason of age, race, color, sex, social or national origin or social condition, political affiliation, political or religious ideology, or for being a victim or perceived as a victim of domestic violence, sexual aggression or stalking. 29 P.R. LAWS ANN. 29 § 146. To meet a prima facie case of discrimination under

Law 100, a plaintiff must meet an initial burden of showing that he was actually or constructively discharged and alleging that the discharge was discriminatory.  See Castro-Baez v. Tyco Electronics Corp., CIV. 10-2186 JAF, 2012 WL 1934014, at *4 (D.P.R. May 29, 2012) (citing Velázquez-Fernández v. NCE Foods, Inc., 476 F.3d 6, 11 (1st Cir. 2007)).  Once the prima facie case is established under "this 'rather undemanding requirement,'" the employer has the burden of persuasion to prove, by a preponderance of the evidence, that there was "just cause" for the action.  Id. (quoting Velázquez-Fernández, 476 F.3d at 11).  If just cause is established, "the burden of persuasion shifts back to the employee to demonstrate that the discharge was motivated by discrimination."  Hoyos v. Telecorp Communications, Inc., 488 F.3d 1, 6 (1st Cir. 2007).  On the other hand, if there was no just cause, "the Law 100 presumption of discrimination is triggered, shifting the burden to the employer of proving by a preponderance of the evidence that the otherwise-unjustified dismissal was not motivated by discriminatory animus."  Alvarez-Fonseca v. Pepsi Cola of Puerto Rico Bottling Co., 152 F.3d 17, 28 (1st Cir. 1998); see also Colón v. Infotech Aerospace Services, Inc., CIV. 10-2220 FAB/CVR, 2011 WL 8194853, at *2 (D.P.R. Dec. 21, 2011).

Here, plaintiff meets his prima facie burden, showing actual discharge and alleging that the decision was discriminatory.  The standard for just cause under Law 100 is the same as for Law 80.  See id. (citing Baltodano, 637 F.3d at 43).  Thus, it is contested whether there was just cause under Law 100 as well.  Nevertheless, even if it is ultimately unable to show just cause, defendant sufficiently rebuts the presumption of discrimination.  It is appropriate to grant summary judgment on a Law 100 claim "[w]here a plaintiff has 'adduced no significantly probative evidence that his discharge was motivated by age.'"  Zapata v. Univision Puerto Rico,

Inc., CIV. 09-1987 BJM, 2011 WL 4625951, at \*21 (D.P.R. Oct. 3, 2011) (quoting Dávila v.

Corp. de Puerto Rico Para La Difusión Pública, 498 F.3d 9, 18 (1st Cir. 2007)).

Several of plaintiff's allegations do not tend to show discriminatory animus at all.

Plaintiff does not explain how Fuentes's and Figueroa's actions at the store, even if unusual

procedurally, show that plaintiff's termination was discriminatory on the basis of age.  Nor does

plaintiff allege any facts concerning the ages of the employees who were selected to perform

audits instead of him or who received warehouses for their stores.  Similarly, Fuentes's alleged

request for Irizarry to "come down to [his] new store"—which was a reasonable phrasing,

considering that Irizarry was to be plaintiff's replacement—does not relate to plaintiff's or

anyone else's age at all.  None of these occurrences is relevant to whether plaintiff's age was the

reason defendant chose to terminate plaintiff.

Plaintiff also points to a few remarks by his supervisor Fuentes to demonstrate a

discriminatory motive in making the decision to terminate his employment.  For example,

Fuentes allegedly asked plaintiff "if [he] was already removed or tired" and wrote on a sales

report listing, in reference to plaintiff, that "[t]he lion ceased being a lion, and, now, is a cub."

But plaintiff does not connect these remarks to the allegedly discriminatory decision, merely

alleging generally that at some point Fuentes made these comments.  As defendant argues, these

comments would be considered "stray remarks."  Docket No. 20-6, at 12.  "A 'stray remark' is a

statement that, while on its face appears to suggest bias, is not temporally or causally connected

to the challenged employment decision and thus not probative of discriminatory animus."  Barry

v. Moran, 661 F.3d 696, 707 (1st Cir. 2011); see also Ortiz-Rivera v. Astra Zeneca LP, 363 F.

App'x 45, 47 (1st Cir. 2010) ("[T]he[] *probativeness* [of stray remarks] *is circumscribed* if they

were not related to the employment decision in question.") (internal quotation omitted)

(emphasis in original).  Without "some discernible evidentiary basis for assessing their temporal and contextual relevance" to the employment decision, these remarks are insufficient for a reasonable jury to find discriminatory animus.[3]  Id. at 48 (internal quotation omitted); see also, e.g., Piñeiro-Ruiz v. Puerto Rico Ports Auth. of Puerto Rico, 557 F. Supp. 2d 248, 255 (D.P.R. 2008) (holding that, where plaintiff's supervisors allegedly "constantly called him 'old man' (viejo), 'grumpy old man' (viejo cascarrabias) or 'crazy man' (loco)," it was insufficient to meet his burden under the Age Discrimination in Employment Act (ADEA)[4]).

Nor is the remark that "this is where it all ends for the old man," in the context of a conversation allegedly about the upcoming replacement of plaintiff with a new store manager, sufficient to show discriminatory animus.  Merely referring to plaintiff as "old" is too ambiguous to prove discriminatory intent, even when it is close to the time of termination.  See, e.g., Ortiz-Rivera, 363 F. App'x at 47 (holding that supervisor's statements that plaintiff was "too old," "too old for this," "too old to be making these mistakes," and "old enough to know what it means to lie and to omit information" close to the time of plaintiff's termination were ambiguous and thus insufficient to prove discriminatory intent) (internal quotations omitted); Stone v. Autoliv ASP, Inc., 210 F.3d 1132, 1135, 1140 (10th Cir. 2000) (holding supervisor's comment at a meeting about plaintiff's future with the company less than one month before termination, that "'at [plaintiff's] age, it would be difficult to train for another position' or 'difficult to find a new

---

[3] Furthermore, plaintiff has not shown how the statement "[t]he lion ceased being a lion, and, now, is a cub" tends to demonstrate discriminatory animus based on age, merely pointing out that the incident occurred.  See Docket No. 22, at 14.  Plaintiff provides no reason for a jury to interpret this remark as referring to plaintiff's older age.  Rather, the line, on its face, appears to refer to plaintiff (or his store) now as a *cub* in the context of store performance, rather than the lion he (or it) used to be.

[4] The only difference between analyses under the ADEA and Law 100 for an age discrimination claim is the "burden-shifting framework."  Palacios v. First Bank Puerto Rico, CIV. 11-1420 GAG, 2012 WL 3837443, at *9 (D.P.R. Sept. 4, 2012) (quoting Dávila, 498 F.3d at 18).  "The analysis under the ADEA and Law 100 is practically the same."  Id.

job,'" to be "too abstract" to show discriminatory animus); Speen v. Crown Clothing Corp., 102 F.3d 625, 636 (1st Cir. 1996) ("[A]mbiguous remarks, tending to suggest animus based on age, are insufficient, standing alone, to prove an employer's discriminatory intent.") (internal quotation omitted); Phelps v. Yale Sec., Inc., 986 F.2d 1020, 1025 (6th Cir. 1993) (holding that supervisor's comments that plaintiff "was too old to be [her previous supervisor]'s secretary," plaintiff "would still be [her previous supervisor]'s secretary if she were younger," and "[plaintiff's] fifty-fifth birthday that month was a cause for concern" were "isolated and ambiguous comments" that were too abstract, irrelevant, and prejudicial to support a finding of age discrimination).

Finally, plaintiff claims that he was not selected for the positions of manager trainer or market leader in 2005 and 2006, and the positions were given to employees who were younger and had less experience at Champs. Plaintiff is not making an independent claim for relief based on this employment action. See Docket No. 1-15, at 3. Rather, these events, if relevant at all, must be probative of discriminatory animus with respect to the termination on March 16, 2010. But these events occurred four or five years before plaintiff's termination. Plaintiff runs into similar problems demonstrating temporal and causal connections between these two sets of events as he did for Fuentes's stray remarks. An event which might otherwise tend to show discrimination may be too remote in time, as a matter of law, to be probative of the motive of a later termination. See Ansell v. Green Acres Contracting Co., Inc., 347 F.3d 515, 524-25 (3d Cir. 2003) ("There is a point at which a prior or subsequent act becomes so remote in time from the alleged discriminatory act at issue, that the former cannot, as a matter of law, be relevant to intent.… Any such determination must be based on the potential the evidence has for giving rise to reasonable inferences of fact which are of consequence to the determination of the action ….")

(internal quotation omitted); <u>Wittwer v. Maclean Hunter Pub. Co.</u>, No. 95-1699, 1995 WL

88983, at *9 (7th Cir. Dec. 27, 1995) (holding in ADEA case the discharge of another employee

over the age of 70 a year and a half after plaintiff left the employer to be "too remote in time" to

be evidence of pretext); <u>Horak v. Glazer's Wholesale Drug Co., Inc.</u>, CIV.A. 3:05-CV-901-K,

2006 WL 2017110, at *5 (N.D. Tex. July 19, 2006) (holding in ADEA case that a transfer to a

less stable position was "too remote in time to be probative of [employer's] motive" regarding

elimination of plaintiff's position a year and a half later), <u>aff'd</u>, 06-10854, 2007 WL 713154 (5th

Cir. Mar. 6, 2007); <u>Manning v. New York Univ.</u>, 98 CIV. 3300 (NRB), 2001 WL 62872, at *2

n.3 (S.D.N.Y. Jan. 24, 2001) ("It is well established that remoteness in time can be a sufficient

reason for excluding as irrelevant evidence of allegedly discriminatory statements or actions.");

<u>see also</u> <u>Carmona Rios v. Aramark Corp.</u>, 139 F. Supp. 2d 210, 221-22 (D.P.R. 2001) (finding in

ADEA case remarks made one year or one year and a half prior to discharge, without nexus to

discharge, to be too remote).   A time period of four or five years, as a matter of law, is too

remote for the earlier actions to have relevance to the issue of intent of the later termination,

unless the earlier events were "part of an ongoing series of discriminatory acts." <u>O'Rourke v.</u>

<u>City of Providence</u>, 235 F.3d 713, 730 (1st Cir. 2001).[5]   Furthermore, plaintiff has not alleged

that the decisionmakers for the 2005 and 2006 events were the same as the ones for the 2010

termination, which makes "the potential the evidence has for giving rise to" relevant "reasonable

inferences of fact" connecting the two sets of events even more slight.  <u>Ansell</u>, 347 F.3d at 525.

There are insufficient temporal and causal connections between the 2005 and 2006 events and

---

[5] Under the continuing violation doctrine, a plaintiff may "seek damages for otherwise time-barred allegations if they are deemed part of an ongoing series of discriminatory acts and there is some violation within the statute of limitations period that anchors the earlier claims." <u>Id.</u> (internal quotation omitted).

the subsequent 2010 termination to demonstrate discriminatory animus.[6]  Thus, the facts in this case are insufficient to sustain a Law 100 cause of action for age discrimination.

## IV.    CONCLUSION

Based on the foregoing analysis, the Court hereby **GRANTS IN PART** and **DENIES IN PART** defendant's motion for summary judgment (Docket No. 20).  The Court **DENIES** defendant's motion with respect to plaintiff's Law 80 cause of action.  The Court, however, **GRANTS** defendant's motion with respect to plaintiff's Law 100 cause of action, and **DISMISSES** the Law 100 cause of action **WITH PREJUDICE**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 15th day of October, 2012.

s/Marcos E. López
U.S. Magistrate Judge

---

[6] By the same token, defendant's reliance on audits and notices from 2000 to show just cause for termination is inapposite because those documents are simply too remote from the 2009 and 2010 audits and termination to be relevant.